

## Fourth Court of Appeals
### San Antonio, Texas

**MEMORANDUM OPINION**

No. 04-25-00494-CV

**IN THE INTEREST OF B.H.**, a Child

From the 438th Judicial District Court, Bexar County, Texas
Trial Court No. 2024-PA-00827
Honorable Lisa Jarrett, Judge Presiding

Opinion by: Irene Rios, Justice

Sitting: Irene Rios, Justice
Adrian A. Spears II, Justice
Velia J. Meza, Justice

Delivered and Filed: January 21, 2026

AFFIRMED

Appellant Mother appeals the trial court's order terminating her parental rights to her child,

B.H.[1]  In her sole issue, Mother challenges the sufficiency of the evidence supporting the trial

court's finding that termination was in B.H.'s best interest.  We affirm.

### BACKGROUND

The Department became involved in the underlying case when Mother and B.H. both tested

positive for methamphetamines and THC when B.H. was born.  The Department initially offered

---

[1] To protect the identity of minor children in an appeal from an order terminating parental rights, we refer to the parents as "Mother" and "Father," and we refer to the child using his initials or as "the child."  *See* TEX. FAM. CODE ANN. § 109.002(d); TEX. R. APP. P. 9.8(b)(2).  The trial court's order also terminated Father's parental rights to B.H.; however, Father does not appeal.

Mother family-based safety services ("FBS") to avoid removal. When Mother failed to engage with FBS, the Department sought removal of the child.

On May 21, 2024, the Department filed a petition seeking termination of Mother's parental rights. The trial court held a bench trial on May 12, 2025. The trial court heard testimony from Shanice Morris, the Department's removal investigator; Cynthia Cruz, the Department's caseworker; Rachel Halm, the Department's family specialist that was assigned to assist B.H.'s foster family; Mother; Father; and B.H.'s maternal grandfather.

On July 16, 2025, the trial court signed an order terminating Mother's parental rights to B.H. The trial court terminated Mother's parental rights based on statutory grounds (D), (E), (N), and (O) in subsection 161.001(b)(1) of the Texas Family Code. *See* TEX. FAM. CODE ANN. §§ 161.001(b)(1)(D), (E), (N), (O). The trial court also found it was in the children's best interests to terminate Mother's parental rights. *See id.* § 161.001(b)(2). Mother appeals.

STATUTORY REQUIREMENTS AND STANDARD OF REVIEW

To terminate parental rights pursuant to section 161.001 of the Texas Family Code, the Department has the burden to prove by clear and convincing evidence: (1) one of the predicate grounds in subsection 161.001(b)(1); and (2) that termination is in the best interest of the child. TEX. FAM. CODE ANN. § 161.001(b). Clear and convincing evidence requires "proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id.* § 101.007.

When reviewing the sufficiency of the evidence, we apply well-established standards of review. *See id.* §§ 101.007, 161.206(a); *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (conducting a factual sufficiency review); *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (conducting a legal sufficiency review).

"In reviewing the legal sufficiency of the evidence to support the termination of parental rights, we must 'look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true.'" *In re J.L.B.*, No. 04-17-00364-CV, 2017 WL 4942855, at *2 (Tex. App.—San Antonio Nov. 1, 2017, pet. denied) (mem. op.) (quoting *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002)). "[A] reviewing court must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so." *J.F.C.*, 96 S.W.3d at 266. "A corollary to this requirement is that a [reviewing] court should disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible." *Id.*

"In reviewing the factual sufficiency of the evidence to support the termination of parental rights, we 'must give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing.'" *J.L.B.*, 2017 WL 4942855, at *2 (quoting *J.F.C.*, 96 S.W.3d at 266). "A [reviewing court] should consider whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding." *J.F.C.*, 96 S.W.3d at 266. "The [reviewing] court must hold the evidence to be factually insufficient if, in light of the entire record, the disputed evidence contrary to the judgment is so significant that a reasonable factfinder could not have resolved that disputed evidence in favor of the ultimate finding." *In re M.T.C.*, No. 04-16-00548-CV, 2017 WL 603634, at *2 (Tex. App.—San Antonio Feb. 15, 2017, no pet.) (mem. op.).

Further, in a bench trial, the trial court is the sole judge of the credibility of witnesses and the weight to be given their testimony. *In re J.F.-G.*, 627 S.W.3d 304, 312, 317 (Tex. 2021). This is because "the trial judge is best able to observe and assess the witnesses' demeanor and credibility, and to sense the 'forces, powers, and influences' that may not be apparent from merely

reading the record on appeal." *Coburn v. Moreland*, 433 S.W.3d 809, 823 (Tex. App.—Austin 2014, no pet.) (quoting *In re A.L.E.*, 279 S.W.3d 424, 427 (Tex. App.—Houston [14th Dist.] 2009, no pet.)). We, therefore, defer to the trial court's factual determinations and judgment regarding credibility. *J.F.-G.*, 627 S.W.3d at 312; *see also In re R.R.A.*, 687 S.W.3d 269, 279 n.50 (Tex. 2024) ("Reviewing courts, however, must defer to the factfinder's judgment as to the credibility of the witnesses and the weight to give their testimony, including reasonable and logical inferences from the evidence.").

### BEST INTEREST

In her sole issue, Mother argues the evidence is legally and factually insufficient to support a finding that termination of her parental rights is in B.H.'s best interest.

When considering the best interest of a child, we recognize the existence of a strong presumption that the child's best interest is served by preserving the parent-child relationship. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). However, we also presume that prompt and permanent placement of the child in a safe environment is in the child's best interest. TEX. FAM. CODE ANN. § 263.307(a).

In determining whether a parent is willing and able to provide the child with a safe environment, we consider the factors set forth in section 263.307(b) of the Texas Family Code.[2]

---

[2] These factors include:

> (1) the child's age and physical and mental vulnerabilities; (2) the frequency and nature of out-of-home placements; (3) the magnitude, frequency, and circumstances of the harm to the child; (4) whether the child has been the victim of repeated harm after the initial report and intervention by the department; (5) whether the child is fearful of living in or returning to the child's home; (6) the results of psychiatric, psychological, or developmental evaluations of the child [or] the child's parents . . . ; (7) whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home; (8) whether there is a history of substance abuse by the child's family or others who have access to the child's home; (9) whether the perpetrator of the harm to the child is identified; (10) the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision; (11) the willingness and ability of the child's family to

*See id.* § 263.307(b). We also consider the *Holley* factors.[3] *See Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These factors are not exhaustive. *In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002). "The absence of evidence about some of these considerations would not preclude a factfinder from reasonably forming a strong conviction or belief that termination is in the child's best interest, particularly if the evidence were undisputed that the parental relationship endangered the safety of the child." *Id.* In analyzing these factors, we must focus on the best interest of the child, not the best interest of the parent. *Dupree v. Tex. Dep't of Protective & Regul. Servs.*, 907 S.W.2d 81, 86 (Tex. App.—Dallas 1995, no writ).

Evidence that proves one or more statutory ground for termination may also constitute evidence illustrating that termination is in the child's best interest. *C.H.*, 89 S.W.3d at 28 (holding same evidence may be probative of both section 161.001(b)(1) grounds and best interest, but such evidence does not relieve the State of its burden to prove best interest). "A best-interest analysis may consider circumstantial evidence, subjective factors, and the totality of the evidence as well as the direct evidence." *See In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied). "A trier of fact may measure a parent's future conduct by his past conduct and determine whether termination of parental rights is in the child's best interest." *Id.*

---

effect positive environmental and personal changes within a reasonable period of time; (12) whether the child's family demonstrates adequate parenting skills . . . ; and (13) whether an adequate social support system . . . is available to the child.

TEX. FAM. CODE ANN. § 263.307(b).

[3] These factors include: (1) the child's desires; (2) the child's present and future emotional and physical needs; (3) any present or future emotional and physical danger to the child; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist the individuals seeking custody to promote the child's best interest; (6) the plans for the child by the individuals or agency seeking custody; (7) the stability of the home or proposed placement; (8) the parent's acts or omissions which may indicate that the existing parent-child relationship is improper; and (9) any excuse for the parent's acts or omissions. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976); *see also In re E.C.R.*, 402 S.W.3d 239, 249 n.9 (Tex. 2013).

Here, the Department was concerned that Mother was abusing illegal drugs while she was pregnant with B.H. "Illicit drug use is relevant to multiple *Holley* factors, including the child[]'s emotional and physical needs now and in the future, the emotional and physical danger to the child[] now and in the future, Mother's parental abilities, the stability of Mother's home, and the acts or omissions which may indicate an improper parent-child relationship." *In re A.N.*, No. 04-19-00584-CV, 2020 WL 354773, at *3 (Tex. App.—San Antonio Jan. 22, 2020, no pet.) (mem. op.).

Not only did the trial court hear testimony that B.H. and Mother both tested positive for methamphetamines and THC when B.H. was born, it also heard testimony that Mother previously had her rights to five other children terminated in two different proceedings because of her illicit drug use. Mother's parental rights to her oldest three children were terminated in 2019. In 2020, Mother gave birth to twins who tested positive for amphetamines and marijuana at birth and her rights to the twins were subsequently terminated. To address the Department's concerns regarding Mother's drug use in this case, Mother's service plan required her to take a drug assessment, successfully complete a drug treatment program, and pass random drug tests.

Mother never took the drug assessment. Although Mother claims the drug test she took when B.H. was born was negative for drugs, Shanice Morris, the Department's removal investigator, disputed this testimony stating that Mother was positive for methamphetamines and THC.[4] Morris also testified Mother admitted to Morris that she was using methamphetamines just before B.H. was born. Mother testified she tested negative on another drug test approximately one

---

[4] Morris's testimony is clear that Mother tested positive for drugs when B.H. was born. However, it appears from Morris's testimony that Mother took two drug tests when B.H. was born: one was positive for drugs and the other was negative for drugs. Notwithstanding the negative drug test, the trial court could have reasonably believed that Mother was using illegal drugs while she was pregnant with B.H. based on Mother's positive drug test and the fact that B.H. was born positive for drugs.

month after B.H. was born. However, the Department was unable to verify Mother had a clean drug test because this alleged test was not requested by the Department and Mother never provided the negative results from the alleged drug test. Although Mother claims to be sober, the trial court could have disbelieved Mother's self-serving testimony. *See In re E.A.M.V.*, No. 04-18-00866-CV, 2019 WL 1923214, at *4 (Tex. App.—San Antonio May 1, 2019, pet. denied) (mem. op.) (explaining a trial court could have disbelieved a parent's testimony, and we defer to the factfinder on witness credibility issues). The Department referred Mother to eleven drug tests throughout the pendency of the case and Mother failed to take a single drug test out of the eleven referrals. The trial court could have reasonably concluded that Mother refused to appear for drug testing because she was using illegal drugs, especially considering Mother's extensive history of drug abuse. *See In re A.M.L.*, No. 04-19-00422-CV, 2019 WL 6719028, at *4 (Tex. App.—San Antonio Dec. 11, 2019, pet. denied) (mem. op.) ("The trial court also could have reasonably inferred that [a parent's] failure to appear for drug testing indicated that [the parent] was avoiding testing because [the parent] was using drugs."). "Continued illegal drug use by the parent is conduct that jeopardizes parental rights and may be considered as establishing an endangering course of conduct, and that termination is in the best interest of the child." *In re J.S.R.*, No. 04-21-00517-CV, 2022 WL 1559107, at *4 (Tex. App.—San Antonio May 18, 2022, pet. denied) (mem. op.) (alterations omitted).

Mother also claimed that she satisfied the requirement to participate in a drug treatment program because she took a short, four-hour online drug and alcohol awareness class. However, Morris and Cynthia Cruz, the Department's caseworker, both testified that course was insufficient to satisfy Mother's requirements under her service plan. Morris explained Mother was required by her service plan to participate and successfully complete a more robust, comprehensive drug

treatment program because of Mother's extensive history of drug abuse, which resulted in prior termination of parental rights to her five oldest children and the removal of B.H. in this case.

Based on this evidence, the trial court could have reasonably formed a firm belief or conviction that termination of Mother's parental rights was in B.H.'s best interest, especially considering Mother's illicit drug use endangered the child when he was born positive for drugs and Mother's failure to address her drug addiction will continue to endanger the child if he is returned to her. *See* TEX. FAM. CODE ANN. § 263.307(b)(8) (stating a parent's history of substance abuse is a factor considered by the trial court in determining a child's best interest); *In re K.M.*, No. 04-08-00037-CV, 2008 WL 2923655, at *2 (Tex. App.—San Antonio July 30, 2008, pet. denied) (mem. op.) (holding a parent's illegal substance abuse "places her children in emotional and physical danger").

In addition to the evidence regarding Mother's drug use, the trial court heard testimony that Mother has not completed the other requirements of her service plan. "A [factfinder] may infer from a parent's failure to take the initiative to complete the services required to regain possession of [her] child that [s]he does not have the ability to motivate [her]self to seek out available resources needed now or in the future." *In re J.M.T.*, 519 S.W.3d 258, 270 (Tex. App.—Houston [1st Dist.] 2017, pet. denied). Cruz testified that Mother was given the opportunity to participate in the creation of her service plan, but she chose not to participate. The service plan was made an order of the court and Mother acknowledged at trial that she was admonished by the trial court in a prior hearing to complete her service plan.

In addition to the services related to drugs, Mother's service plan required her to participate in a psychological evaluation and follow all recommendations, successfully complete an eight-to-twelve-week parenting course, participate and successfully complete individual counseling,

provide proof of stable housing and employment, and participate in all court hearings and cooperate with the Department.

The trial court heard testimony that Mother is not compliant with her service plan. In addition to the drug-related non-compliance mentioned above, Mother has not taken her psychological evaluation, has not completed the parenting course, and has not engaged in individual counseling. *See* TEX. FAM. CODE ANN. § 263.307(b)(10) (listing a parent's willingness "to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision" as a best interest factor considered by the trial court); TEX. FAM. CODE ANN. § 263.307(b)(11) (providing a trial court should consider the parent's willingness "to effect positive environmental and personal changes within a reasonable period of time" when determining whether parental termination is in a child's best interest). Mother claims she was unaware she had to participate in a psychological evaluation. However, she acknowledged she was aware of her service plan, and the service plan, which was admitted into evidence, clearly states she is required to participate and complete a psychological evaluation and follow all recommendations therefrom. Further, Cruz testified Mother received and reviewed her service plan in August 2024.

The trial court admitted a certificate showing that Mother completed a four-hour parenting class; however, Cruz testified, and Mother's service plan clearly states, that Mother is required to participate in an eight-to-twelve-week parenting course. Mother did not take any parenting course except the four-hour class. The trial court could have reasonably concluded the parenting course Mother took was insufficient to satisfy the express requirement for Mother to take a multi-week parenting course. *See Holley*, 544 S.W.3d at 372 (holding the trial court should consider the parental abilities of the parent and the parent's acts or omissions that may indicate the existing

parent-child relationship is not a proper one when determining whether termination of parental rights is in the child's best interest).

The trial court heard testimony that B.H. is in a foster-to-adopt home and is well cared for by his foster parents. Cruz testified she believes termination of Mother's parental rights is in B.H.'s best interest. Cruz opined Mother has been given adequate time to complete her services, obtain sobriety, and show a willingness to do the things necessary to show she can parent B.H. However, Mother has not taken the steps necessary to address the Department's concerns, and B.H. needs permanency. According to Cruz, termination of Mother's parental rights would allow B.H. to be adopted by his foster family and achieve permanency. Cruz testified B.H. is very attached to the foster parents, is happy in their care, and the foster parents and B.H. are bonded with each other. Rachel Halm, the Department's family specialist, testified she goes to B.H.'s foster home at least once a month to ensure the foster family is adequately caring for the child. Halm confirmed there is a bond between B.H. and his foster parents. B.H. looks for his foster parents when they leave the room, he likes to be around them, and he likes to be held by them. Halm testified B.H. "seems very happy in the home every time [she is] around them." When Halm visits, B.H. is "[v]ery smiley[,]" "laughing[,]" and "playing with the other children in the home." Based on Halm's observations, B.H. is "doing great" and the foster family is able to meet all of B.H.'s physical and emotional needs. The foster parents were initially working with physical therapy to improve the child's ability to walk. Now that B.H. has hit all his goals for walking, the foster family is working with physical therapy to improve his fine motor skills. Halm confirmed the foster parents want to adopt B.H. if Mother's parental rights are terminated. *See Holley*, 544 S.W.2d at 372 (stating the trial court should consider the plans for the child by the agency seeking custody when considering the child's best interest).

In sum, the trial court heard evidence that Mother has struggled with addiction since at least 2019. Mother was given chances to achieve sobriety in two prior cases involving termination of her parental rights to her five oldest children, to no avail. In each of those cases and in this case, the Department removed the children because it was concerned with Mother's drug use. The trial court heard testimony that Mother is not addressing her substance abuse issues and has failed to cooperate with the Department and failed to comply with her service plan to address the Department's concerns. Based on the evidence at trial, the trial court could have reasonably concluded that Mother continues to use drugs, and her drug addiction will endanger B.H. if he is returned to Mother. In contrast, B.H. is placed in a loving foster home that is meeting his needs and wants to adopt him. The Department plans for B.H. to be adopted by the foster placement.

Having reviewed the record and considered all the evidence in the appropriate light for each standard of review, we conclude the trial court could have formed a firm belief or conviction that termination of Mother's parental rights was in B.H.'s best interest. *See id.* § 161.001(b)(2); *H.R.M.*, 209 S.W.3d at 108; *J.P.B.*, 180 S.W.3d at 573; *see also generally In re A.B.*, 437 S.W.3d 498, 503 (Tex. 2014) (recognizing a reviewing court need not detail the evidence if affirming a termination judgment). Therefore, we hold the evidence is legally and factually sufficient to support the trial court's best-interest finding.

Accordingly, Mother's sole issue is overruled.

## CONCLUSION

We affirm the trial court's order terminating Mother's parental rights to B.H.

Irene Rios, Justice